## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| Deborah Neff, | |
|            Plaintiff, | |
| v. | Case No. 23 cv 02205 |
| Champaign Community Unit School District #4, | |
|            Defendant. | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Champaign Community Unit School District #4, and in support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, states as follows:

### INTRODUCTION

Plaintiff Deborah Neff brings claims against her former employer, the District, alleging interference and retaliation under the Family and Medical Leave Act and age discrimination under the Age Discrimination in Employment Act. Neff alleges that the District interfered with her FMLA rights when it denied her request for leave to travel out of state to be with her daughter for the birth of her grandson and so her daughter would not be alone thereafter while Neff's son-in-law worked. Neff alleges that the District discriminated against her based on her age by denying her leave request and subsequently terminating her employment after she went on the trip anyway, knowing that the time off was not approved.

The undisputed facts and Neff's admissions establish that her claims fail as a matter of law. Neff was not entitled to take FMLA leave. Further, the District terminated Neff's employment for a legitimate reason and not related to FMLA leave or her age. Neff cannot establish that any similarly situated employee was treated more favorably. Thus, the District respectfully asks this Court to grant its motion for summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

**A. Neff's Employment at the District.**

1.      Neff is 58 years old (DOB: 7/3/1966) and was formerly employed by the District. Compl. at ¶¶ 14; Neff Deposition Transcript (Ex. A) 17:1-12; Neff Deposition Exhibit (Dep. Ex.) 4.

2.      Neff has a daughter who is 37 years old (DOB: July 5, 1987). Ex. A, 49:5-9, Dep. Ex. 27.

3.      On April 3, 2018, Neff was hired as a Teacher's Aide at Kenwood Elementary, and she served in this position until her employment was terminated on January 20, 2023. Ex. A, Dep. Exs. 2, 3, 4, 23. Prior to working as a Teacher's Aide, Neff worked for the District as substitute teacher and an AVID tutor in 2016 and 2017. Ex. A, 17:1-18:8; Dep. Ex. 1.

4.      During the 2022-2023 school year, Neff's supervisors were Dr. Trevor Nadrozny, Principal (over age 40) and Jennifer Tee, Assistant Principal (over age 40). Ex. A, 31:4-11; Affidavit of Ken Kleber, (Ex. B) ¶ 17.

5.      During her employment, Neff was represented by the Champaign Educational Support Professionals Union and was subject to a collective bargaining agreement (CBA), which contains a nondiscrimination provision and grievance policy. Ex. A, 39:25-40:12, 142:9-143:23; Dep. Ex. 22, p. 9-12, 14.

6.      Neff was aware of the District's policies prohibiting discrimination, harassment and retaliation and received annual training on the same. Ex. A, 144:8-145:7; Dep. Ex. 21.

---

[1]  Defendant concedes the truth of these statements only for purposes of its Motion for Summary Judgment.

7.      The District has a policy governing the use of Family and Medical Leave. Ex. A,
Dep. Ex. 5; Ex. B, ¶ 3; Affidavit Exhibit (Aff. Ex.) 1.

**B. Neff's Conversations With Her Union Representative Regarding Her Desire To Take An Extended Leave of Absence.**

8.      On September 3, 2022, Neff emailed Aeden Murphy, an Associate Staff member at
her Union, stating in part: "My daughter is expecting her first son, Emmit Taoman Chaprez,
January 11th. She lives in Stillwater Oklahoma and we both want me to be there to help everyone
the first week or so. I'm not sure how I request this time off. Is this FMLA? Personal leave, etc.
Whatever it is can you please let me know how I should proceed?" Ex. A, 49:10-50:18; Dep. Ex.
6, District 000485.

9.       On September 8, 2022, Union representative Dylan Swank responded to Neff's
questions, stating in part: "Generally you are not entitled to FMLA leave if you're not going to be
providing care for the child. You may need to take other accrued benefit leave (vacation, personal,
etc.) - however I'd reach out to Unit 4's HR department and see if they will allow you to utilize
accrued sick leave. I think there is an argument to be made to allow you to utilize sick leave, but
its ultimately going to be a permissive item from the District – they may or may not allow it, and
their decision is likely final on this issue. Obviously, if you were going to be serving as the primary
caregiver for the child, things would be a little different." Ex. A, 50:19-52:13; Dep. Ex. 7, District
00511.

10.     On September 11, 2022, Neff responded to Swank's email stating, in part, "today,
I felt that using sick time makes the most sense in regards to helping my daughter give birth, since
I will be the primary caregiver in my grandson's first week of life and regard to my daughter's
health if she needs blood etc. during birth." Ex. A, Dep. Ex. 7, District 00511.

**C. The District's Concerns Regarding Neff's Performance And Communications Regarding Her Request for Leave**

11.    On September 12, 2022, Neff did not attend a mandatory meeting that all employees were expected to attend. Ex. A, 61:5-65:5. Ex. B, ¶ 4. On September 20, 2022, Principal Nadrozny emailed Neff stating that he wants to meet to discuss her failure to attend the meeting on September 12th and expectations related to her being present at all staff meetings as well as previous directives to Neff to follow her schedule. Ex. B, ¶ 4. The parties scheduled the meeting for November 1, 2022. Ex. B, ¶ 5.

12.    On September 18, 2022, in preparation for the meeting regarding her performance, Neff emailed her Union representative stating in part that she believes that having to attend the meeting with Nadrozny is "age discrimination and maybe they want someone younger who follows orders blindlessly." Ex. A, 135:21-136:15; Dep. Ex. 20, District 000571.

13.    In October 2022, Neff asked Tee how to apply for FMLA, and Tee told Neff that she would have to apply for FMLA through Human Resources. Ex. A, 42:7-16; 45:23-46:4

14.    On October 18, 2022, Neff emailed Nancy Whitehouse, then-Administrative Assistant –Human Resources, stating, "My daughter, Alicia, is expecting my grandson, Emmit, January 11th. She lives in Stillwater, Oklahoma and her husband has to work. He is a professor at Oklahoma State University. They asked if I could come and help take care of Emmit since he will be working quite a bit. I want to leave January 7th and stay until the end of January / beginning of February. Do I put my time request in AESOP or are there other requirements?" Ex. A, 56:3-57:15; Dep. Ex. 8, District_000242.

15.    On October 18, 2022, Taryn Wilson, Human Resources Administrative Assistant responded to Neff's email stating in part, "As far as being off duty, you would be able to use your

personal leave (it looks like you have 28 hours available), but that is all the time you would have available to use." Ex. A, 56:3-57:15; Dep Ex. 8, District_000241.

16.     In October 2022, Neff also contacted Human Resources by phone about applying for FMLA. Ex. A, 46:2-5; 58:7-13. Neff spoke to a secretary, who told Neff that she was not eligible for FMLA but she could apply for a leave of absence or resign from her position and become a substitute teacher when she was ready to return for work. Ex. A, 46:2-10; 48:6-49:9; 58:9-13.

17.     On November 1, 2022, Neff and her Union representative met with Tee and Nadrozny to discuss Neff's performance concerns and expectations moving forward. Ex. B, ¶ 5. This included the incident in which Neff failed to attend a mandatory all-staff meeting on September 12, 2022. Ex. A, 61:1-62:12. Neff was not disciplined as a result of the conduct discussed at the meeting. Ex. A, 68:13-15, 133:19-134:15.

18.     After the November 1, 2022 meeting, Neff sent an email to Swank, stating in part that she felt attacked at the meeting and she believes that she has been the victim of implicit bias and prejudice the last few years. Ex. A, Dep Ex. 10, District_000548.

19.     Swank responded on November 3, 2022 via email stating in part, "I do not believe ageism is an issue here- you left school, they weren't sure why, and they wanted to follow up." Ex. A, Dep Ex. 11, District_000544.

20.     With regard to Neff's request for an extended leave of absence, Swank also clarified in the same email, "as far as options go, yes, there are several. To be clear, they are NOT asking for your resignation – they DID say that if you were to take two months of time and didn't have accrued vacation or personal leave to cover that time, they might pursue disciplinary action. They're entitled to do that, even if it's a crappy decision." Ex. A, Dep Ex. 11, District_000544.

Swank recommended that Neff apply for an unpaid leave of absence pursuant to the terms of the CBA and noted that this would not constitute a break in service. *Id*. Swank further advised that Neff could resign instead, but that would be a break in service and Neff would lose seniority and accrued leave. *Id*. Additionally, Swank advised there may be substitute positions available that Neff could apply to without constituting a break in service. *Id*. Swank further stated that the District is not required to grant a leave of absence and that Neff would not be entitled to her old position upon return. *Id*.

**D. Neff's Request for An Extended Leave of Absence And The District's Response**

21.     On November 3, 2022, Neff sent an email to Human Resources requesting a leave of absence for second semester. Ex. A, 57:15-59:4, 74:12-14; Dep. Ex. 9, District_000418.

22.     Human Resources asked, "what is the reasoning for requesting a leave of absence?" Ex. A, 58:16-59:4; Dep. Ex. 9, District_000420.  Neff responded via email stating "I committed to my daughter and son-in-law I would help them for 3 weeks for the birth of my grandson, Emmit, in Stillwater Oklahoma and this is the only way I can come back to being an Aide at Kenwood." Ex. A, 58:16-59:4; Dep. Ex. 9, District_000420. In a follow-up email, Neff stated "I totally understand if I'm denied."  Dep. Ex. 9, District_000421. In another follow up email, Neff stated "actually, I expect to be denied. Thank you for your consideration and understanding, either way." Dep. Ex. 9, District_000422. Neff sent other follow up emails stating, "if I'm denied, I would love to hold at Kenwood," and "In any case, if denied, I'd like to volunteer at Kenwood." Dep. Ex. 9, District_000425.

23.     On November 9, 2022, Ken Kleber, Assistant Superintendent of Human Resources & Organizational Effectiveness, (over age 40) emailed Neff stating in part," I spoke with Dr. Nadrozny regarding your request for a Leave of Absence for second semester. Dr. Nadrozny does

not support granting a leave for reasons I believe he has already shared with you. As he and Ms. Tee discussed with you last week (and I later discussed with your union representative), we are willing to hire you onto our substitute list if you resigned your permanent position." Ex. A, 75:18-76:76:14, Dep Ex. 12, District_000427; Ex. B, ¶ 2.  Kleber also included the steps Neff would need to take if she was interested in being a substitute. *Id.*

24.    On November 13, 2022, Neff responded, "My daughter's husband is not able to be there due to conferences. My sister is there this week because Ozgur, my son-in-law is out of town for the week and my son-in-law does not want my daughter alone. This is the same reason they want me to stay a couple of weeks." Ex. A, 77:12-23, Dep. Ex. 12, District 000427.

25.    On November 13, 2022, Neff followed up in a separate email stating, "[Nadrozny] never mentioned why I couldn't come back. The reason I am asking for a few weeks is because my son-in-law has to be away for conferences for some of that time. This week my sister is staying there because my son-in law doesn't want my daughter to be alone." Ex. A, 77:24-78:19, Dep. Ex. 12, District 000428. Neff also wrote "PS my sub license is valid now…." *Id.*

26.    On November 17, 2022, Kleber responded, "I have asked [Nadrozny] to connect with you regarding the denial of your leave request. Please follow the process below if you want to be a sub." Dep. Ex. 12, District 000428-429.

27.    On November 29, 2022, Swank emailed Neff asking if she wanted to file a grievance based on the denial of her request for a Leave of Absence. Ex. A, 81-86:12, Dep. Ex. 13, District 000494-95. Neff responded on December 6, 2022 stating, "I'm still wondering FMLA laws since I will be the only caregiver for a good part of those 3 weeks." Ex. A, 81-86:12, Dep. Ex. 13, District 000495. Swank sent Neff the guidelines for FMLA leave posted on the Department

of Labor website and stated, "I do not believe you qualify, but feel free to look." Ex. A, 81-86:12, Dep. Ex. 13, District 000497.

**E.  Neff Proceeds to Book Her Ticket to Oklahoma Despite The District's Denial of Her Leave of Absence**

28.    Although Neff's request for a Leave of Absence was not approved, she entered her anticipated absence from January 9, 2023 through February 2, 2023 into AESOP. Ex. A, 86:15-88:21; Dep Ex. 14, District_000405, District_000407. AESOP is an automated software system that helps schools manage absences and find substitutes. Ex. B, ¶ 6. While AESOP streamlines the process for finding substitute coverage, this automated system does not "approve" a request for leave. Ex. B, ¶ 7. Employees are still required to obtain approval from their supervisor to utilize personal leave, vacation leave, or for extended leaves, and in the case of FMLA leave, employees are required to obtain approval from Human Resources. Ex. B, ¶ 7, Aff. Ex. 1.

29.    Neff knew that she had only been approved to use her personal time off, which equaled 28 hours of time. Ex. A, 56:3-57:15; 90:25-92:3, Dep Ex. 8, District_000241.

30.    On AESOP, a substitute teacher aide, Mark Freedman, indicated that he could cover Neff's absence. Ex. A, 56:5-18, 96:14-97:6.

31.    On January 3, 2023, Neff emailed Nadrozny and others at the District stating that her ticket to Stillwater, Oklahoma is set for Wednesday, January 18th, at 7:00 AM and that she cannot figure out how to cancel her AESOP absence January 9th through January 17th. Neff further stated "I will be in Champaign and be able to work those dates." Ex. A, 86:15-89:16, Dep. Ex. 14. District 000405.

32.    Neff only booked a one-way ticket to Stillwater, Oklahoma. Ex. A, 92:1-8.

33.    When Neff shortened her absence, Freedman, the substitute who originally signed up to cover the absence, was no longer available to cover the absence. Ex. A, 97:7-12. No other

substitute was available to cover Neff's absence. Ex. A, 100:2-9, 104:16-105:23, Dep. Ex. 16 and 17.

34.    Tee responded to Neff's email asking her to provide the exact school days she will be gone. Ex. A, 89:17-90:8, Def. Ex. 14. District 000405. Neff responded "I just spoke to Ozgur, my son-in-law. He will be back Saturday, February 12. It looks like my return will be Monday, February 14 or Tuesday, February 15. When we leave on Sunday, February 14th, possibly driving, I'll have a clear day, if not before." As of now, can I plan for Tuesday, February 15th?  I'll let you know if its sooner. Basically now, the determining factor is transportation, traveling back." Ex. A, 89:17-90:8, Dep. Ex. 14, District 000407.

35.    On January 6, 2023, Nadrozny emailed Neff stating, "I wanted to follow up on our conversation yesterday about your planned absences moving forward. The last time we met with Mrs. Tee, your union representative, and yourself, I had indicated that you needed to consider returning to a substitute position to accommodate your lengthy absence. I had also mentioned that the district does not support your extended absence, even though we can understand your reasons for the absence. You indicated that you needed a reason for the denial of leave. I can share that your continued absences throughout the year have been an issue and that not having any coverage for 20 days is a problem. If you go on your leave, you will be terminated from your position and you will not be eligible to be hired back by the district. If you resign and become a substitute aide, you will be able to come back without any issues. Also, if our position has not been filled by the time you return, you would be eligible to apply for this position as well. I wanted to know where you stand." Ex. A, 92:9-94:20; Dep. Ex. 15, District, 000462.

36.    On January 9, 2023, Neff responded to Nadrozny's email stating "thanks. I can meet in person, to explain more….there is a leave of absence clause… is there any way you can get the

original sub who signed up for the 3 weeks to sub on the 18th on?  I'm sure hindsight will be 20/20. I want to be there close to the birth of Emmet. Ozgur wants me there when he is gone… who knows, maybe I'll drive back midway and go back when Ozgur has to leave…." Ex. A, Dep. Ex. 15, District 000462.

**F. The District Reiterates Neff's Options To Accommodate Her Lengthy Leave Request and the Consequences For Taking Unapproved Leave**

37.     On January 12, 2023, Nadrozny sent Neff an email stating, "we do not have a sub for you and there is no one lined up or available. As I reiterated several times, this leave is not approved. If you choose not to resign prior to your leave, the district will proceed with termination. If you are terminated, you are not eligible to work in the district. As I also stated before, if you resign, you can continue as a substitute immediately upon returning. Please let me know if you need any more clarification." Ex. A, 100:2-9, Dep Ex. 16, District_000434.

38.     Neff responded on January 13, 2023 stating, "did you receive the AESOP information?  Mark Freedman, I'm pretty sure is the person's name who signed up to sub for me January 9th to February 2nd. Anyway, someone could get him back?" Ex. A, Dep Ex. 16, District_000434. Neff sent a separate email asking why her leave of absence request was denied. Ex. A, Dep Ex. 16, District_000434.

39.     Nadrozny responded on January 13, 2023, stating, "your leave of absence request was denied because a leave for the reason you stated is not authorized. I can share that if you choose to substitute you would be able to do return without any discipline. When you return there are many teacher aide vacancies throughout the district and our opening may also be still available." Ex. A, Dep. Ex. 15, District_000435.

40.     On January 13, 2023, Neff responded, "so would I have to start at a level one and first year again?  Or would my past 5 years of service count?  FMLA….seems like I could qualify,

federally . . . .?"  Ex. A, Dep Ex. 16, District_000435. Nadrozny responded, "your previous experience would be recognized." Ex. A, Dep. Ex. 15, District_000437.

41.     Separately, on January 13, 2023, Neff forwarded the AESOP sub information to Nadrozny and Swank, stating "this was the person who was going to sub for me. I'm hoping he still can, when my dates changed he was erased completely from subbing. The reason for my termination was lack of coverage, however, originally, I had coverage and hope to still have coverage…." Ex. A, Dep Ex. 17, District0000466.

42.     On January 14, 2023, Neff sent Nadrozny an email stating, "Alicia will definitely need me there!!!!! She had a c section. She said that she and Emmet worked very hard to get out naturally, but he was too big and she was too small. Her water broke the 12th, Emmet was born the 14th. She is in Love! She said, 'He worked so hard.'" Ex. A, Dep Ex. 15, District 000438.

**G.  Neff Does Not Show Up To Work As Assigned And Her Employment is Terminated**

43.     On January 17, 2023, Swank emailed Neff, stating, "I called last night and left a brief voicemail. Again, while I do not believe you're eligible for FMLA, you can certainly try filing and see what happens; if you'll be serving as the primary caregiver for a portion of time, you may be eligible for FMLA leave for that portion of time only. Again, the issue seems to be your lack of accrued benefit time- while there is a Leave of Absence provision in the contract, the District exercised its right to deny your petition and the timeline to file a grievance over that decision has elapsed. Unfortunately, the District does have the right to hold you accountable for only using accrued leave that you actually have, and they have been pretty clear about consequences for exceeding that time . . .  Again, you can certainly try filing for FMLA for the portion of time that you'll be serving as the primary caregiver, but that might be the only other avenue open right now."  Ex. A, 106:1-17:8, Dep. Ex. 18, District000473-74.

44.     Neff did not show up to work as scheduled on January 17, 2023, nor was her absence on this date approved. Ex. A,147:7-148:7, Ex. B, ¶ 8..

45.     Neff did not contact Human Resources regarding applying for FMLA leave pursuant to Swank's email dated January 17, 2023. Ex. A, 46:11-20; 108:2-109:21, Ex. B, ¶ 9.

46.     Neff also did not show up to work on January 18, 19, or 20, 2023 and as of January 20, 2023, Neff utilized all her accrued benefit time, including 28 hours of personal time. Ex. A, 148:8-16; Ex. B, ¶¶ 10-11.

47.     Taryn Wilson, Human Resources Administrative Assistant, attempted to contact Neff via telephone on January 19 and Neff did not answer. Ex. A, 150,4-7 Dep. Ex. 23; Ex. B, ¶12. Nadrozny contacted Neff on January 20 via text to say it was imperative that she talk to Human Resources. Ex. A, 150:8-25, Dep. Ex. 23; Ex. B, ¶ 13. Neff responded stating that she did not see any missed calls from Human Resources, but she did not attempt to contact Human Resources. Ex. A, 150:8-25, Dep. Ex. 23; Ex. B, ¶ 13. Wilson called Neff again on January 20, 2023 and Neff told Wilson that she did not intend to resign and become a substitute. Ex. A, 151:1-152:11, Dep. Ex. 23; Ex. B, ¶ 14.

48.     On January 20, 2023, Neff's employment was terminated because she abandoned her job. Ex. A, 147:7-148:19, Dep. Ex. 23; Ex. B, ¶ 15.

**H.  Neff's Trip to Oklahoma**

49.     Neff arrived in Oklahoma on January 18, 2023. Ex. A, 106:21-107:12.

50.     While Neff was in Oklahoma, she helped her daughter get out of bed because her feet were swollen and helped her do "simple things." Ex. A, 109:22-110:20. Neff helped feed the baby at night, cleaned, took walks with both her daughter and the baby, and played with the baby

when Neff's daughter had to go out to a doctor's appointment "or something like that." Ex. A, 109:22-110:20. Neff's daughter was directed by her doctors to walk. Ex. A, 110:18-20.

51.     Neff would spend time with the baby when Neff's daughter was taking a shower or if she had other things to do. Ex. A, 110:21-111:16. Neff's son-in-law was also present, other than when he traveled or worked both in the home and out of the home. Ex. A, 110:21-111:11.

52.     On April 11, 2023, months after her employment had been terminated, Neff faxed the District a copy of a letter from her daughter's physician dated April 10, 2023 stating "It is my medical opinion that Alicia delivered by cesarian 01/14/2023. As a result, it is requested that her mom Deborah Neff, act as a primary caregiver for Alicia's post-partum, emotional and physical care, starting 01/18/2023 to 02/02/23." Ex. A, 179:17-180:11, Dep Ex. 27; Ex. B, ¶ 16.

## I.    Neff's Age Discrimination Claim

53.     Neff believes that the District discriminated against her based on her age because it denied her request for a leave of absence and terminated her employment. Ex. A, 122:20-128:24.

54.     Neff claims that four younger teachers in their thirties, namely Zillis, Flodstrom, Donovon and Bishop, were treated better than her because they were permitted to take FMLA leave and she was not. Ex. A, 123:7-130:22. Each of these teachers took leave after they had given birth to their children. Ex. A, 128:25-130:22. Neff also claims that a teacher, Bailey, was treated better because she was granted a leave of absence for mental health reasons, while Neff's request for a leave of absence based on her desire to help her daughter was denied. Ex. A, 124:3-15.

55.     Neff did not file a grievance through her Union alleging age discrimination nor did she ever complain to Human Resources regarding any alleged discrimination, harassment or retaliation. Ex. A, 136:23-137:4, 145:25-146:22.

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Summary judgment is the "put up or shut up" moment in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). Speculation and self-interested assertions are insufficient. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).

**ARGUMENT**

**I.    Neff's FMLA Interference and Retaliation Claims (Counts I and II) Fail**

To establish an FMLA interference claim, Neff must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer interfered with, restrained, or denied her FMLA benefits to which she was entitled. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022). To prevail on an FMLA retaliation claim, a plaintiff must show that (1) she engaged in FMLA-protected activity; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the two. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015).

Neff's claims fail because she was not entitled to FMLA leave and she failed to provide sufficient notice to make the District aware that her absence was due to a potentially FMLA

qualifying reason. Her FMLA retaliation claim also fails because she cannot establish that she engaged in protected activity and her employment was terminated for legitimate non-discriminatory reasons. Summary judgment is proper.

### A. Neff Was Not Entitled to FMLA Leave

As a preliminary matter, in order to succeed on either claim, Neff must establish that she was entitled to take leave under the FMLA. Neff cannot do so, which is fatal to both of her claims.

The FMLA permits an eligible employee to take leave "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). On its face, the FMLA does not allow grandparents to take protected leave to take care of their grandchild. This is confirmed by caselaw: "But the FMLA does not entitle an employee to leave in order to care for a grandchild." *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 581 (6th Cir. 2007).

The undisputed facts establish that Neff's request for leave was based on her desire to be present for the birth of her grandson and to help her daughter while her son-in-law traveled for work. SUF ¶¶ 2, 8, 10, 14, 22, 24, 25, 34, and 36. Indeed, Neff stated, "we both want me to be there to help everyone the first week or so," and "they asked if I could come and help take care of Emmit since [my son-in-law] will be working quite a bit." SUF ¶¶ 8, 10, 14.

Additionally, when Neff was told that she was not entitled to FMLA under these circumstances, she requested a "leave of absence" pursuant to the terms of the applicable collective bargaining agreement. SUF ¶ 21. In doing so, she reiterated, "I committed to my daughter and son-in-law I would help them for 3 weeks for the birth of my grandson," "My daughter's husband is not able to be there due to conferences. My sister is there this week because Ozgur, my son-in-law is out of town for the week and my son-in-law does not want my daughter alone. This is the same

reason they want me to stay a couple of weeks," and "the reason I am asking for a few weeks is because my son-in-law has to be away for conferences for some of that time. This week my sister is staying there because my son-in-law doesn't want my daughter to be alone." SUF ¶¶ 22, 24-25. Thus, based on these admissions, Neff cannot establish that she was entitled to FMLA leave.

To the extent that Neff now seeks to rely on the fact that her daughter had a c-section, her claim still fails. On January 14, 2023, Neff disclosed for the first time that her daughter had a c-section. SUF ¶ 42. Neff did not provide any further details regarding her daughter's condition or any care that she may need. Neff did however speak with her Union representative, who told Neff, "Again, while I do not believe you're eligible for FMLA, you can certainly try filing and see what happens. . ." SUF ¶ 43.  It is undisputed that Neff never sought FMLA leave pursuant to her Union representative's advice. SUF ¶ 45.

Further, discovery revealed that Neff would not have been eligible for FMLA leave because of her daughter's c-section. The FMLA permits an employee to take leave from work to care for a son or daughter 18 years of age or older only if the child is suffering from a serious health condition **and** is "incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12)(B) (emphasis added).

 Here, Neff's daughter was not "incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12)(B). According to the FMLA regulations, "physical or mental disability," means a "physical or mental impairment that substantially limits one or more of the major life activities of an individual," as these terms are defined by the regulations for the Americans with Disabilities Act (ADA). 29 C.F.R. § 825.102. The ADA regulations provide that an individual is "substantially limit[ed]" in a major life activity if she is unable to perform or

significantly restricted as to the condition, manner, or duration in which she performs a major life activity. 29 C.F.R. § 1630.2(j).

According to Neff, once she arrived in Oklahoma on January 18, 2023, her daughter was able to walk and was directed by her doctors to do so. SUF ¶¶ 49-50. She was able to bathe independently. SUF ¶ 51. Neff helped her daughter with feeding the baby and played with the baby when her daughter showered, or when she went to the doctor or if she had other things to do. SUF ¶¶ 50-51. Thus, Neff's claim fails because the undisputed facts indicate that her daughter was not "incapable of self-care because of a mental or physical disability," and Neff was not present to render such care to her daughter. Instead, consistent with Neff's plan from the beginning, the facts establish that Neff assisted with the care of her grandson and that she was present while her son-in-law traveled so her daughter was not alone. Summary judgment is proper. See *Novak*, 503 F.3d at 581 (holding that although employee's daughter was suffering with short-term postpartum depression, she was not "disabled;" thus, the employee was not entitled to FMLA leave).

## B. Neff's FMLA Interference and Retaliation Claims Also Fail Because Neff Failed to Provide Sufficient Notice

In addition to the above, Neff cannot establish that she provided sufficient notice to make the District aware that her absence was due to a potentially FMLA qualifying reason. In *Cruz v. Publix Super Markets, Inc.*, the plaintiff requested a non-FMLA unpaid leave under company policy to travel to attend the birth of her grandchild. 428 F.3d 1379, 1380 (11th Cir. 2005). The company agreed to provide two weeks of unpaid leave, however, the employee sought to extend that leave by two weeks because she anticipated her daughter delivering the baby early and said that her son-in-law broke his collarbone and her daughter needed help. *Id.* at 1380-81. The company agreed to move up her two week leave but refused to grant her additional time. *Id.* at 1381. The employee then asked if she was eligible for FMLA leave, and the company said "no."

*Id.* The employee had her daughter's physician fax a letter to the company referencing the son-in-law's broken collarbone and stating that he was "now unable to help with labor coaching" and further, that the daughter "feels she needs her mother to come help with labor…" *Id.* The employee's FMLA leave request was denied, and when she did not return to work after her two-week unpaid leave, her employment was terminated for job abandonment. *Id.* at 1381-82.

The Eleventh Circuit affirmed summary judgment on the plaintiff's FMLA claims because the employee failed to provide sufficient notice. *Id.* at 1384-85. Specifically, the court found that the employee did not offer information about her daughter's alleged pregnancy complications, but merely offered her own belief that her daughter was going into labor, that her son-in-law had a broken collarbone, and that her daughter needed her help as the reasons for leave. *Id.* at 1385. These facts were insufficient to shift the burden to the company to request further information because the company could not reasonably be expected to conclude that her absence qualified for FMLA leave. *Id.* "We cannot expect [the company] to undergo an investigation to uncover some possible circumstance under which [the employee] would be entitled to FMLA leave when the employee never raised any such circumstance." *Id.* "In other words, [the employee] was obligated to inform [the company] that her daughter was experiencing complications due to her pregnancy, was unable to care for herself, or provide some other indication that her daughter was 'incapable of self-care because of a mental or physical disability.'" *Id.* 1386.

Like the plaintiff in *Cruz*, Neff merely expressed her desire to assist her adult daughter with her grandson while her son-in-law traveled for work, a condition that the FMLA does not cover. SUF ¶¶ 2, 7, 8, 10, 14, 22, 24, 25, 34, and 36. While Neff disclosed that her daughter had a c-section on January 14, 2023, this is insufficient because Neff failed to provide any details to put the District on notice that the FMLA potentially applied. *Cruz,* 428 F.3d at 1385-86. In fact, prior

to this, Neff kept changing the dates she intended to be absent based on her son-in-law's travel schedule rather than any alleged needs of her daughter based on an alleged disability. SUF ¶¶ 28, 31, 34, 36, 44, 46-48.

The note that Neff provided on April 11, 2023 (SUF ¶ 52), months after her employment had been terminated, does not save her claim because it fails to provide the District with timely notice of the potential application of the FMLA, and it does not provide any detail as to whether Neff's daughter was "incapable of self-care because of a mental or physical disability." Similarly, in *Aubuchon v. Knauf Fiberglass, GmbH*, an employee told his employer that he wished to take FMLA leave because "he wanted to stay home with his wife until she gave birth." 359 F.3d 950, 952 (7th Cir. 2004). The employer denied leave and, thereafter, the employee provided a note from the wife's physician stating that the wife was experiencing "complications." *Id.* While this note would have been sufficient notice, the court nevertheless granted summary judgment in favor of the employer because the employee did not submit the note until after his request was denied and thus he failed to give his employer sufficient notice to invoke the protections of the FMLA. *Id.* at 953. "Employees should not be encouraged to mousetrap their employers by requesting FMLA leave on patently insufficient grounds and then after leave is denied, obtaining a doctor's note that indicates that sufficient grounds existed, though they were never communicated to the employer." *Id.* The same must apply here. Summary judgment is proper.

### C. Neff's FMLA Retaliation Claim Fails Because She Did Not Engage in Protected Activity, She Was Terminated After She Failed To Show Up To Work, And The District Did Not Act With Discriminatory Intent

Neff's FMLA retaliation claim fails because she did not engage in protected activity and her termination was not causally connected to any alleged FMLA-protected activity. *Curtis*, 807 F.3d at 220. Further, Neff cannot point to any facts that establish the District acted with

discriminatory or retaliatory intent- evidence that the employer "was acting under a prohibited animus." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634 (7th Cir. 2009). The undisputed facts establish that the District did not act with discriminatory intent.

First, as noted above, Neff cannot establish that she engaged in FMLA protected activity. Neff failed to follow FMLA protocol and chose to take an unapproved leave of absence. SUF ¶¶ 44-48. Her actions are not "protected" under the FMLA. *See supra*; *see also*, 29 C.F.R. § 825.303(c); *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 369 (7th Cir. 2020).

Neff also cannot establish that her termination was causally connected to any alleged FMLA protected activity. Neff knew that she had only been approved to use her personal time off, which equaled 28 hours of time. SUF ¶ 29, 35. Neff also knew that although a substitute initially signed up to cover her anticipated absence, that substitute was no longer available and the District did not have a substitute to cover her absence. SUF ¶ 30, 33, 35-39, 41. Neff continued to insist that the District find a substitute to cover for her and she did not return to work. SUF ¶ 30, 35-39, 41. Being absent from work without approval is a legitimate basis for termination and the FMLA does not insulate an employee from discipline for abusing leave. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997). Thus, Neff cannot establish the necessary causal connection between her termination and any alleged FMLA protected activity.

Further, Neff cannot establish that the District acted with a discriminatory animus, and the undisputed facts establish the opposite. At all times, Neff was represented by the Union. SUF ¶ 5. The District communicated with both Neff and her Union regarding Neff's options to accommodate her request for leave, even though it did not qualify for FMLA. SUF ¶¶ 15, 16, 20, 23, 26, 35, 37, 39, 47. Both the District and Neff's Union representative told Neff the consequences of taking unapproved leave. SUF ¶¶ 20, 35, 37, 39, 43. Even when Neff did not show up to work

as assigned, the District attempted to reach her multiple times to find out if she would be returning to work. SUF ¶¶ 47-48. After Neff utilized her accrued leave, she indicated that she would not be returning to work. SUF ¶ 47. Thus, Neff effectively abandoned her position and the District acted based on legitimate non-discriminatory reasons and not with animus. *Kariotis*, 131 F.3d at 681; *see also, Scruggs v. Carrier Corp.*, 688 F.3d 821, 825–26 (7th Cir. 2012); *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008); *Juday v. FCA US LLC*, 57 F.4th 591, 596 (7th Cir., 2023). Summary judgment is proper.

## II.    Neff Cannot Succeed on Her Age Discrimination Claim (Count III).

Neff asserts that her termination and the denial of her request for leave were age discrimination. SUF ¶ 53. Plaintiffs may proceed under the holistic approach from *Ortiz* v. *Werner Enter., Inc.,* 834 F.3d 760 (7th Cir. 2016) or present evidence using the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021). Under *Ortiz*, the "determinative question" is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the adverse employment action. *Id.* Under *McDonnell Douglas*, a plaintiff must show that (1) she is a member of a protected class, (2) she was meeting defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably. *Simpson v. Franciscan All., Inc*., 827 F.3d 656, 661 (7th Cir. 2016). "[I]t's not enough to show that age was a motivating factor. The plaintiff must prove that, but for [her] age, the adverse action would not have occurred." *Martino v. MCI Commc'ns Servs., Inc*., 574 F.3d 447, 455 (7th Cir. 2009). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse

employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id.* at 453.

Here, there is no dispute that Neff was over forty or that her employment was terminated, and her extended leave request was denied. Neff's claim fails because her age was not the but-for cause of her termination or the denial of her leave request and the District had a legitimate, non-discriminatory reason for its decisions. Further, Neff cannot establish that she was meeting the District's legitimate expectations or that other younger employees were treated more favorably.

**A. Age was Not the "But-For" Cause of Neff's Termination Or The Denial Of Her Leave Request And the District Had Legitimate, Non-Discriminatory Reasons For its Decisions**

Neff cannot prove that her age was the "but-for" cause of her termination because the undisputed facts establish that Neff did not show up to work as assigned and she did not return to work once her accrued leave benefits expired. SUF ¶¶ 44-48. The District made clear to Neff that if she chose to take unapproved leave, her employment would be terminated. SUF ¶¶ 35, 37, 39, 43, 48. The facts further establish that Neff was provided with alternative options that would have allowed her to return to work without consequence. SUF ¶¶ 15, 16, 20, 23, 26, 35, 37, 39. Neff refused those options and chose to take off from work without approval, which resulted in her termination. SUF ¶¶ 44, 46, 48. Neff's decision to be absent without approval is a legitimate and non-discriminatory reason for termination. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir.1997); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir.1992) ("It seems self-evident that an employer is acting with a 'legitimate non-discriminatory reason' in terminating an employee who simply fails to report to work."). *Lindemann v. Mobil Oil Corp.*, 940 F.Supp. 189, 196 (N.D. Ill. 1996) ("Courts have ruled that excessive absenteeism is a legitimate, nondiscriminatory reason for terminating an employee), *aff'd*, 141 F.3d 290 (7th Cir. 1998).

The denial of Neff's request for an extended leave was unrelated to her age. Neff did not have available time off work, her continued absences had been an issue, and there was no substitute available. SUF ¶ 33, 35, 37. The District denied leave for legitimate reasons, unrelated to Neff's age. Thus, the summary judgment is proper.

Lastly, Neff cannot establish that the District harbored any discriminatory animus. Neff failed to provide any facts or evidence to support a claim of animus other than citing to her termination, which as explained above, was based on legitimate non-discriminatory reasons.  It is undisputed that Neff was aware of the District's policies prohibiting discrimination, harassment and retaliation and she received annual training on the same. SUF ¶ 6. It is further undisputed that Neff made comments to her Union representative indicating that she felt she was the victim of bias and prejudice related to her age when the District asked to meet with her after she failed to attend a mandatory all staff meeting. SUF ¶¶ 12, 18-19. Yet, Neff never submitted a complaint to Human Resources or a grievance through her Union. SUF ¶ 55. Further, the fact that the District hired Neff when she was already over forty years old indicates that the District did not harbor any age-based animus and weakens Neff's claim. SUF ¶¶ 1, 3; *see Kawczynski v. F.E. Moran, Inc.*, 238 F.Supp.3d 1076, 1085 (N.D. Ill. 2017); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 923-924 (7th Cir. 1996); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) ("It seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later."). Additionally, both Kleber and Neff's supervisors, Nadrozny and Tee, were over the age of forty. SUF ¶¶ 4, 23. This further weakens Neff's claim. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572 (7th Cir. 1998).

## B. Neff Cannot Establish that She Was Meeting the District's Legitimate Expectations

Neff cannot establish that she was meeting the District's legitimate expectations. As an initial matter, absenteeism has been recognized as a legitimate, nondiscriminatory reason for an employer to terminate an employee. *See supra, Oates*, 116 F.3d at 1171; *Rush*, 966 F.2d at 1115; *Lindemann*, 940 F.Supp. at 196. Thus, Neff cannot prove that she was meeting the District's expectations when she was absent from work without authorization. To the extent that Neff seeks to rely on the fact that she received generally positive evaluations and was not previously disciplined prior to this incident, her arguments should be rejected. "Meeting or even exceeding expectations in one job function does not negate deficiencies in other job functions." *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 992 (N.D. Ill. 2014).

Further, there was at least one incident in which Neff was required to meet with her supervisors because her performance did not meet expectations. SUF ¶ 4, 11, 17. Although Neff confided in her Union representative that she believed that this was age discrimination, Neff's union representative responded stating that it wasn't ageism, and the District was just following up on why she left school when she should have been at all staff mandatory meeting. SUF ¶ 12, 18, 19. In short, Neff cannot prove that she was meeting the District's legitimate expectations when she failed to appear for work as assigned.

## C. Neff's Alleged Comparators Were Not Treated More Favorably.

Neff fails to identify a comparator to establish her claim. Comparators must be directly comparable in all material respects, which includes holding the same job and having engaged in similar conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Kawczynski,* 238 F.Supp.3d at 1084-85; *Skiba v. Illinois Central Railroad Co.*, 884 F.3d 708, 723 (7th Cir. 2018). "[W]here the plaintiff alleges

the employer disciplined [her] more harshly than [her] comparator, 'the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor[.]' " *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019). "The critical question is whether the employees have engaged in conduct of comparable seriousness"—for example, whether their conduct "violates the same rule or is of a similar nature." *Id.*

When Neff was asked who was treated more favorably, Neff named four younger teachers who took FMLA leave without consequence after the birth of their children. SUF ¶ 54. Neff also identified one teacher who was granted a leave of absence for mental health reasons. SUF ¶ 54. These individuals are not proper comparators. Each of these individuals were teachers, and thus, have distinct jobs, backgrounds, and standards of employment. Further, the four teachers who took FMLA leave did so for a permitted reason: they took leave after childbirth. SUF ¶ 54. Additionally, the other teacher was granted a leave of absence for their own mental health reasons. SUF ¶ 54. Neff does not identify any individual who was permitted to take either FMLA leave or a leave of absence to care for a grandchild or to assist their adult child after giving birth. Similarly, Neff does not identify any employee who was absent without authorization and was not terminated. Thus, Neff cannot establish that anyone was treated more favorably and her age discrimination claim fails.

## CONCLUSION

For the reasons set forth above, Neff cannot meet her burden and there are no genuine issues of material fact for trial. Therefore, the District is entitled to summary judgment as a matter of law and seeks dismissal of Neff's claims with prejudice.

Dated: February 28, 2025                    Respectfully submitted,

                                            **CHAMPAIGN COMMUNITY SCHOOL
                                            DISTRICT NO. 4, Defendant.**


                                            By: */s/ Caroline K. Kane*
                                                    One of Its Attorneys

Sally J. Scott (ARDC #6204350) (sjs@franczek.com)
Caroline K. Kane (ARDC #6324144) (ckk@franczek.com)
Hailey M. Golds (ARDC #6312907) (hmg@franczek.com)
Franczek P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
(312) 986-0300

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be electronically served upon the parties of record on this 28th day of February, 2025, namely:

*/s/ Caroline K. Kane*